**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **CALIMA MCGREGOR**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**<br><br>***Defendant.*** | **Civil Action No.: 8:25-cv-3973-GLS** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Plaintiff, Calima McGregor (hereinafter "Plaintiff"), by and through undersigned counsel, Petra L. Aaron, Esq., and GDH Law, LLC, hereby and respectfully submits this Opposition to Defendant Washington Metropolitan Area Transit Authority's (hereinafter "WMATA") Motion to Dismiss Plaintiff's Amended Complaint and in support thereof states as follows:

## INTRODUCTION

WMATA's motion rests on a categorical reading of *Burkhart v. Wash. Metro. Area Transit Auth*., 324 U.S. App. D.C. 241, 112 F.3d 1207 (1997). However, WMATA's reliance on *Burkhart* is misplaced. *Burkhart* addresses discretionary policy decisions about personnel standards and institutional frameworks. It does not extend to the negligent execution of established safety procedures or to the negligent operation of a bus during transit service.

WMATA also cites the recent decision in *Hobbs v. Wash. Metro. Area Transit Auth*., No. DLB-25-1373, 2025 U.S. Dist. LEXIS 210599 (D. Md. Oct. 27, 2025), as controlling authority, but *Hobbs* is distinguishable on multiple material grounds.

*Hobbs* involved a property owner seeking recovery for property damage to a parked vehicle, not a passenger seeking recovery for personal bodily injury.

**FACTUAL AND PROCEDURAL HISTORY**

On or around November 6, 2025, Plaintiff filed her original complaint in the Circuit Court for Prince George's County against WMATA and Reginald W. Douglas alleging negligence, negligent hiring, supervision, and retention, and seeking punitive damages.

On or around December 9, 2025, Plaintiff's Complaint was removed to this Honorable Court because of WMATA's Notice of Removal.

On February 10, 2026, Plaintiff filed an Amended Complaint, which superseded the original complaint. In the Amended Complaint, Plaintiff realleges her negligence claim against WMATA stating that WMATA was negligent in failing to adequately screen, monitor, or evaluate the medical fitness of its driver, Reginald W. Douglas; Allowing an unfit driver to operate a transit bus; and negligently operating a bus causing a collision with a building.

On May 7, 2026, WMATA filed the present Motion to Dismiss, arguing that Plaintiff's negligence claim is barred by sovereign immunity under the WMATA Compact and that Plaintiff has failed to state a claim upon which relief can be granted.

**LEGAL STANDARD**

A claim is plausible when the plaintiff pleads factual content that allows a reasonable inference that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

WMATA is immune from tort liability based on its policy-based, discretionary decisions grounded in social, economic, or political considerations, but not for routine operational negligence in carrying out day-to-day transit operations. (recognizing the discretionary-function framework in Compact immunity analysis); *Beebe v. WMATA*, 129 F.3d 1283 (D. C. Cir. 1997).

Not all discretionary acts performed by governmental actors fall within the discretionary function exception and are thereby shielded from tort liability. *Berkovitz*, 486 U.S. at 537. *Wash. Metro. Area Transit Auth. v. Tinsley*, 202 Md. App. 115, 127. If "the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield," that is, decisions "grounded in social, economic, and political policy." *Id.* at 537; *Dalehite*, 346 U.S. at 36.

## ARGUMENT

### I. OPERATIONAL NEGLIGENCE IS NOT PROTECTED BY SOVERIGN IMMUNITY

#### A. Plaintiff's Claims Arise from Proprietary and Operational Functions, Not Discretionary Policy Decisions

The Supreme Court has explained that not all discretionary acts performed by government agents fall within the discretionary function exception to liability. *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267 (1991). Only those acts grounded in social, economic, and political policy are protected. The Court illustrated this principle with a specific example: if a government official drove an automobile on a mission connected with official duties and negligently collided with another car, the discretionary function exception would not apply, because although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion cannot be said to be grounded in regulatory policy. *Id.* (citations omitted)

This principle applies directly to Plaintiff's allegations. It is operational negligence in the performance of the ministerial function of driving a bus safely. Similarly, the failure to adequately screen and monitor a specific operator for fitness involves the execution of established safety procedures, not the formulation of policy about what those procedures should be.

Plaintiff's claim challenges the negligent execution of ministerial, operational functions. It does not challenge the discretionary policy decisions that underly hiring, training, or supervisory frameworks. Accordingly, the claim falls within the category of proprietary functions for which the Compact waives immunity, and this Court possesses subject-matter jurisdiction.

**A. Burkhart Addresses Discretionary Policy-Level Decisions Not Operational Negligence**

*Burkhart* held that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature and thus immune from judicial review because the hiring, training, and supervision choices that WMATA faces are choices susceptible to policy judgment. *Burkhart v. Wash. Metro. Area Transit Auth*., 324 U.S. App. D.C. 241, 112 F.3d 1207 (1997).

The critical word in *Burkhart* is "decisions." *Burkhart* immunizes the policy-level decisions about hiring, training, and supervision-the institutional choices about what standards to adopt, what criteria to apply, and what protocols to implement.

*Burkhart* does not hold that every action touching on hiring, training, or supervision is categorically immune from negligence. Rather, the immunity applies to the discretionary policy aspects of such decisions.

Plaintiff's complaint does not challenge WMATA's hiring policies, training protocols, or supervisory standards as a matter of policy. Instead, it alleges that the operator negligently drove the bus, causing the collision and Plaintiff's injuries, and that WMATA failed to adequately screen,

monitor, and evaluate the operator's fitness. These allegations describe operational day-to-day negligence to the negligent execution of the driving function and the failure to carry out safety obligations in the context of actual bus operations-not discretionary policymaking.

*Burkhart* does not address the specific question presented here: whether operational negligence in the actual driving of a bus and the deployment of a specific operator on a specific route falls within the immunity for discretionary hiring and supervision decisions.

At the pleading stage, the Court should not assume that all conduct administratively connected to hiring or supervision falls within the discretionary immunity umbrella. The proper inquiry is whether the specific conduct alleged-here, the negligent driving and the failure to ensure a specific operator's fitness-involves discretionary policy judgment or ministerial operational performance.

Plaintiff's allegations go to WMATA's *operational* execution of its transit function-i. e. , the safe operation of buses and the safe deployment of operators-not to the kind of policy-laden decisions the Compact's immunity is intended to protect. WMATA attempts to claim immunity under the discretionary function exception but fails to highlight that "There are…. "discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception . . . ." *Gaubert*, 499 U.S. at 325 n.7.

Those acts are not immune to tort liability because, as the Supreme Court explained, they "cannot" be said to be based on the purposes that the regulatory regime seeks to accomplish." *Id.*

The WMATA Compact provides that "the Authority shall be liable … for its torts and those of its Directors, officers, employees and agents committed in the course of any proprietary function. *Burkhart v. Washington Metro. Area Transit Auth*., 112 F.3d 1207, 1216.

### B. Hobbs is Distinguishable on Multiple Material Grounds

WMATA relies heavily on the recent *Hobbs* decision, *Hobbs v. Wash. Metro. Area Transit Auth.*, No. DLB-25-1373, 2025 U.S. Dist. LEXIS 210599 (D. Md. Oct. 27, 2025). However, *Hobbs* is distinguishable on multiple material grounds.

First, *Hobbs* involved a property owner seeking recovery for property damage to a parked vehicle, whereas Plaintiff is a passenger who suffered personal bodily injury. This distinction is material to the analysis of governmental immunity and the scope of protected functions. A passenger injured during transit operations presents a different relationship to WMATA and a different harm profile than an owner of property collaterally damaged by a vehicle. The passenger is in direct contact with WMATA's operational performance and is the intended beneficiary of WMATA's duty to operate buses safely.

Second, and most critically, the *Hobbs* plaintiff failed to allege that the bus operator was negligent. The *Hobbs* court dismissed the respondeat superior claim without prejudice precisely because the plaintiff did not allege operator negligence. In contrast, Plaintiff's complaint explicitly alleges that the operator negligently drove the vehicle off the roadway, struck multiple objects, and collided with a building. This material difference in pleading content distinguishes *McGregor* from *Hobbs* and cures the defect identified by the *Hobbs* court that led to the dismissal of *Hobbs* claims.

Third, the *Hobbs* court characterized the negligence count as a negligent supervision claim and dismissed it for lack of subject-matter jurisdiction. However, Plaintiff's complaint includes both allegations about WMATA's failure to ensure driver fitness and specific allegations of negligent operation by the operator. The negligent operation claim is not a disguised supervision claim; it is a direct allegation that the operator negligently drove the vehicle, causing injury to

Plaintiff. Negligent operation of a vehicle-the actual performance of the driving function-is ministerial conduct, not discretionary policymaking. Even assuming arguendo, the Hobbs court "granted Plaintiff twenty-one (21) days to file a second amended complaint limited to a claim for *respondeat superior* liability based on the bus operator's alleged negligence…" *Hobbs v. Wash. Metro. Area Transit Auth.*, No. DLB-25-1373, 2025 U.S. Dist. LEXIS 210599 (D. Md. Oct. 27, 2025).

## II. PLAINTIFF HAS ADEQUATELY PLED A NEGLIGENCE CLAIM UNDER RULE 12(b)(6)

### A. The Elements of Negligence are Plead with Specificity

At the motion to dismiss stage, the court must accept as true all well-pleaded facts in the complaint, along with any reasonable inferences derived from them. *SG Md., LLC v. PMIG 1024, LLC*, 264 Md. App. 245, 329 A.3d 373 (2024). Under Maryland law, negligence requires proof of four elements: (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) causation; and (4) damages.

**Duty**: WMATA, as a common carrier operating a public transit bus, owed Plaintiff a duty to operate the bus safely and to ensure that its drivers were fit to operate the vehicle. The Amended Complaint explicitly alleges that WMATA owed these duties. This duty is well-established under Maryland law, which imposes heightened obligations on common carriers to protect their passengers. The complaint's allegations regarding WMATA's duty to operate safely and to ensure driver fitness are sufficient to establish this element at the pleading stage.

**Breach**: The Amended Complaint pleads specific, non-conclusory facts demonstrating breach of WMATA's duty to operate safely. The complaint alleges that on January 17, 2025, the WMATA bus operator drove off the roadway, struck multiple objects including a tree, light poles,

a retaining wall, and a bus stop, and collided with a building in Riverdale, Maryland. These are concrete factual allegations describing the operator's conduct-not legal conclusions. The complaint further alleges that WMATA breached its duty by failing to adequately screen, monitor, or evaluate the medical fitness of its driver and by allowing an unfit driver to operate the transit bus.

These allegations go well beyond conclusory statements. They describe a specific sequence of events: the bus leaving the roadway, striking multiple objects, and hitting a building. Such factual specificity regarding what the operator did, and what went wrong is precisely what distinguishes a plausible claim from a conclusory statement. A reasonable inference from these allegations is that the operator's conduct in driving off the roadway and striking multiple objects constitutes a breach of the duty to operate the bus safely.

**Causation**: The Amended Complaint establishes causation through its allegations that the bus operator's negligent operation caused the collision. The complaint alleges that as a direct result of the collision, Plaintiff suffered neck, back, shoulder, and other injuries. This causal chain-from the operator's negligent conduct (driving off the roadway, striking objects, hitting the building) to Plaintiff's injuries-is pleaded with sufficient factual detail to satisfy pleading requirements.

**Damages**: The Amended Complaint alleges concrete damages. Plaintiff was transported for medical evaluation and underwent extensive chiropractic and physical therapy treatment. Plaintiff incurred expenses and experienced pain and suffering. These allegations of medical treatment, expenses, and pain and suffering constitute sufficient pleading of damages to survive a motion to dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). Here, Plaintiff has pleaded sufficient facts that must be accepted as true. *Id.*

Plaintiff has satisfied the requirements and successfully pleaded all four (4) elements of negligence which under Rule 12(b)(6) would defeat WMATA's Motion to Dismiss for Failure to State a Claim.

**B. Plaintiff's Negligence Claims Allege Operational Negligence, Not Solely Negligent Hiring or Supervision**

WMATA argues that the negligence count is substantively a negligent hiring or supervision claim and should be dismissed. This argument conflates two distinct theories of liability. The Amended Complaint alleges operational negligence-that the bus operator negligently drove the vehicle off the roadway, struck multiple objects, and collided with a building. This is separate from, and in addition to, any allegations about WMATA's failure to ensure driver fitness. The fact that the Amended Complaint also alleges that WMATA failed to adequately screen, monitor, and evaluate the operator does not negate the operational negligence allegations.

Moreover, even accepting WMATA's characterization, the complaint's allegations regarding the failure to ensure driver fitness support a claim of operational negligence in the deployment of a specific operator on a specific route, not a challenge to discretionary policy about hiring and supervision standards generally. The distinction between challenging institutional policies and challenging the execution of safety obligations in a specific operational context is critical and places Plaintiff's claim outside the scope of *Burkhart's* immunity.

//

//

## CONCLUSION

For the foregoing reasons, Plaintiff Calima McGregor respectfully requests that this Court deny Defendant Washington Metropolitan Area Transit Authority's Motion to Dismiss Plaintiff's Amended Complaint in its entirety.

Dated: June 5, 2026

Respectfully Submitted,

*/s/*

Petra L. Aaron, Esq.
Federal Bar No.: 31545
GDH Law LLC
4200 Parliament Place, Suite 510
Lanham, Maryland 20706
P: (301) 769-6835
F: (301) 769-6836
paaron@gdhlawfirm.com
*Counsel for Plaintiff*

## REQUEST FOR HEARING

Plaintiff, Calima McGregor requests a hearing for all issues argued and briefed herein.

Dated: June 5, 2026

Respectfully Submitted,

*/s/*

Petra L. Aaron, Esq.
Federal Bar No.: 31545
GDH Law LLC
4200 Parliament Place, Suite 510
Lanham, Maryland 20706
P: (301) 769-6835
F: (301) 769-6836
paaron@gdhlawfirm.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2026, a copy of the foregoing was forwarded to the following via the court's electronic filing system:

Mason C. Johnson
Bar No.: 31285
Senior Counsel I
WMATA Legal Department
300 Seventh Street, S.W.
Washington, D.C. 20024
(202) 962-2158 telephone
(202) 962-2550 facsimile
E-mail: mcjohnson@wmata.com

/s/

Petra L. Aaron, Esq.
Federal Bar No.: 31545
GDH Law LLC
4200 Parliament Place, Suite 510
Lanham, Maryland 20706
P: (301) 769-6835
F: (301) 769-6836
paaron@gdhlawfirm.com
*Counsel for Plaintiff*